[No. 6,861.—In Bank.]
December 22, 1882.

JOHN BRICKELL v. DAVID F. BATCHELDER ET AL.

FORECLOSURE—MORTGAGE—PROMISSORY NOTE—INTEREST—DEFAULT—PRE-MATURE COMMENCEMENT OF ACTION.—When the interest on a promissory note is made payable monthly, and the note contains the additional clause following: "Any interest remaining due and unpaid shall be added monthly to the principal, and bear interest at the same rate;" and where the mortgage securing said note provides that in case default shall be made in the payment of the principal sum, or the interest thereon, or any part thereof, according to the terms of the note, the mortgagee is empowered to proceed to sell the mortgaged premises in the manner prescribed by law; and further, that out of the proceeds of such sale the mortgagee shall retain the principal sum, with interest, costs, and charges of sale, and attorney's fees; and further, where a subsequent mortgage, between the same parties, contained the stipulation that all arrearages of monthly interest then existing, or thereafter to accrue upon the prior note, shall bear interest from the date respectively at which they *have accrued,* or *shall accrue,* at a higher rate than that expressed in the note—
*Held:* Taking the terms of said note and mortgage together, the mortgagee has the right, on default in the monthly payment of the interest, to commence an action to foreclose.

ID.—SALE.—Held, further, the power given in the mortgage "to proceed to sell in the manner prescribed by law," is in substance the same as a power to proceed to sell by means of an action to foreclose.

MORTGAGE—CONSTRUCTION.—The clause in the mortgage, giving the right to sell in case of default, refers to a default in the *payment* of interest, not to a default in adding it, when unpaid, to the principal; the right to dispose of the interest due and unpaid, in the mode prescribed in the note, was given to the mortgagee, not to the mortgagors; the mortgagee might delay it, or waive it, but a delay in exercising this right could not be construed as depriving him of it.

CASE DISTINGUISHED.—The clause in the mortgage, above quoted, is en-
tirely unlike that in *Bank of San Luis Obispo* v. *Johnson*, 53 Cal. 99.

MORTGAGE—CONSTRUCTION.—The stipulation contained in the subsequent
mortgage aforesaid merely refers to the rate of interest which the arrear-
ages of interest referred to in it are to bear, increasing the rate, and
nothing more. The clauses in the mortgages and note are to be construed
together.

ID.—TAXES—DEFAULT.—Where a mortgage contains the covenants, that
the mortgagors shall pay all taxes upon the mortgaged premises, and
that, in default thereof by them, the mortgagee shall be empowered to
sell, such default gives the mortgagee the right to proceed to foreclose,
if there is no other. It makes no difference that the mortgagee has the
right to pay the taxes and charge them to the mortgagors, the same to
become part of the mortgage lien. The right to foreclose is not waived
or lost, or the default condoned by the mortgagee on his paying the taxes
and charging the mortgagor.

ID.—ID.—ID.—CASE CRITICISED AND DISTINGUISHED.—*Williams* v. *Towns-
end*, 31 N. Y. 411.

CONSIDERATION.—In drawing instruments of any kind where a consideration
is essential, it is not necessary, nor is it the practice, to repeat the con-
sideration upon the insertion of every several promise or covenant.
Where a sufficient consideration is expressed, none can be implied.

CONTRACT OF MARRIED WOMAN.—Section 167 of the Civil Code, under which
a married woman was unable to make a contract for the payment of
money, was changed by the Legislature of 1873–4, taking effect July 1,
1874, so that a married woman could make such contract, and bind
herself by note and mortgage. A mortgage executed by a married
woman June 1, 1874, was binding upon her.

JURY.—The point whether the recognition by a married woman of an obliga-
tion for the payment of money, void when made, after the disability to
so contract had been removed, did not make the obligation binding
upon her, noticed but not decided.

APPEAL from a judgment for the plaintiff in the Twenty-
third District Court in and for the City and County of San
Francisco. THORNTON, J.

*Sol. Hydenfeldt, Jr., S. Hydenfeldt,* and *Hydenfeldt &
Jefferson,* for Appellant.

The Court erred in overruling the demurrer.

At the time the note and mortgage for thirty-six thou-
sand dollars were made and delivered, June 1, 1874, the de-
fendant, Maria Baker Batchelder, was and still is a married
woman, and could make no contract for the direct pay-
ment of money. (C. C., § 167, before repeal.) Neither
could she dispose of the community property, for the law
placed the control and disposition of it during life and cover-

ture in the husband. Therefore, she could, at the time this note and mortgage were made, make a contract of such character only in reference to her separate estate; and in order for the complaint to state a cause of action against her, it should contain an allegation that the contract was made in reference to her separate estate or property, and the condition of the property should also be stated. There being no allegation of this kind, the complaint is fatally defective. (*Coats* v. *McKee*, 26 Ind. 223 ; *Robson & Allen* v. *Shelton & Husband*, 14 La. An. 712; *Sexton* v. *Fleet*, 6 Abb. Pr. (N. Y.), 8–10 ; *Murray et al.* v. *Keyes et al.*, 35 Pa. St. 384 ; *Wallace* v. *Rippon*, 2 Bay (S. C.), 112 ; *Trimble* v. *Miller*, 24 Tex. 214 ; *Covingtons* v. *Burleson*, 28 id. 368.)

The defendant, Maria Baker Batchelder, being unable to make a contract for the direct payment of money on June 1, 1874, simply joining in the note with her husband, made it the obligation of the husband alone. (*Shartzer* v. *Love*, 40 Cal. 93 ; *Brown* v. *Orr et al.*, 29 id. 120 ; *Althof* v. *Conheim*, 38 id. 233.)

The Court erred in overruling the demurrer, for the further reason that at the time of the commencement of this action nothing was due on the thirty-six-thousand-dollar note of June 1, 1874, and therefore the suit to foreclose the mortgage was premature. (*Bank of San Luis Obispo* v. *Johnson*, 53 Cal. 99 ; *Williams* v. *Townsend*, 31 N. Y. 411; Jones on Mortgages, 1175.)

The note and mortgage of June 1, 1874, upon a legitimate construction, do not authorize a foreclosure upon the breach of any condition before the first day of June, 1879. But if there should be any doubt in this, then the clause above quoted in the third mortgage must of a certainty set it at rest. A new contract is made, increasing the rate of interest, and expressly provides what shall be done, not only with the interest in default, but for the interest that shall accrue, viz., all interest in default, whether past or future, shall bear interest at the rate of one per cent., and be added to the principal. (*Haggerty* v. *The Allaire Works.* 5 Sandf. 230–237.)

Again, to give the construction asked for by counsel for respondent to this mortgage is to declare in favor of a penalty,

and, in effect, it would work a forfeiture of the contract. Now, it is a universal rule of courts of equity never to enforce either a penalty or a forfeiture. (Story's Eq. Jur., vol. 2, sec. 1319.)

"Contracts under which a forfeiture is claimed to have accrued should be construed strictly, and the facts urged in support of the forfeiture ought to be clear and explicit, and not be left to inference or argument." (*Von Schmidt* v. *Huntington*, 1 Cal. 56; *Colman* v. *Clements*, 23 id. 248; *Wiseman* v. *McNulty*, 25 id. 237; *Waring* v. *Crow*, 11 id. 367.)

By increasing the rate from ten to twelve per cent. upon the interest in arrears, and all interest to accrue and be in arrears on the mortgage of June 1, 1874, the mortgagee was increasing and adding to his debt the sum of eight hundred and seventy-five dollars. This is the consideration by which the clause in the mortgage of February 20, 1877, is governed.

Parties can make a certain agreement between themselves for a consideration referable to this agreement alone, and at the same time bind themselves in the contract to carry out or extend the terms of a foreign contract, based upon an entirely different and separate consideration. (Parsons on Contracts, 5th edition, vol. 2, page 217.)

The Court erred in giving judgment against the defendant, Maria Baker Batchelder, for deficiency after sale. (*Butler* v. *Baber*, 54 Cal. 178.)

The mortgage gives the mortgagee no right to consider the whole principal sum and interest due, with the right to foreclose upon default in the payment of taxes by the mortgagors. (Jones on Mortgages, vol. 2, sec. 1175; *Williams* v. *Townsend*, 31 N. Y. 411, 412.)

*E. J.* and *J. H. Moore*, for Respondent.

Defendants' demurrers were all properly overruled.

If default is alleged, in that interest was not paid, or that taxes were neglected to be paid by defendants and were paid by plaintiff, and not repaid to him, does it not plainly follow that the right to foreclose and sell at once arose upon such default?

Defendants' neglect to pay the taxes, and their payment by plaintiff to prevent the sale of the mortgaged premises for

such taxes, gave plaintiff the complete right of action to foreclose at once, and collect the whole debt. How otherwise can plaintiff be "empowered to sell the premises above described in the manner prescribed by law, and out of the proceeds of such sale retain the above amount of $36,000, with interest," etc. ?

The decisions applicable to this branch of the case are: *Whitcher* v. *Webb*, 44 Cal. 127; *Bank of San Luis Obispo* v. *Johnson*, 53 id. 499; *McKissick* v. *Cannon*, 4. P. C. L. J. 285.

The mortgage is exactly in accordance with the approved forms in like cases. (See Spaulding's Law Encyclopedia and Forms, ed. 1877, p. 345.)

The general principles applicable to this case, in this regard, are also laid down in 1 Jones on Mortgages, §§ 71–77; *Chick* v. *Willetts*, 2 Kan. 384, 385; id. 54; *Rubens* v. *Prindle*, 44 Barb. 336; *Broderick* v. *Smith*, 26 id. 539; 37 id. 60; 15 How. Pr. 434; 24 id. 400.

Judgment was properly entered on the complaint, and answers upon the ground stated, because the answers failed to deny the facts alleged. They do not deny the genuineness and due execution of the notes and mortgages. "In such cases there can be no issue of fact upon the tenor or effect of the instrument." (*Burnett* v. *Stearns*, 33 Cal. 473, 474; *Sacramento Co.* v. *Bird*, 31 id. 67–73; *Corcoran* v. *Doll*, 32 id. 83–88.

Every denial is of some conclusion of law, made to negative, not some fact stated by the complainant, but some legal conclusion only. Such denials are mere evasions. (*Lightner* v. *Menzel*, 35 Cal. 460; *Burke* v. *Table Mountain W. Co.*, 12 id. 403, 407; *Piercy* v. *Sabin*, 10 id. 22, 27; *Nelson* v. *Murray*, 23 id. 338; *Lightner* v. *Menzel*, 35 id. 452; *Castro* v. *Wetmore*, 16 id. 379; *Christy* v. *Dana*, 42 id. 174; *Kinney* v. *Osborne*, 14 id. 113; *Towdy* v. *Ellis*, 22 id. 659; *Higgins* v. *Wortell*, 18 id. 330, 333.)

The notes and mortgages now before this Court, having, as they do, the signatures of both husband and wife, properly acknowledged and certified, are valid and binding on both parties and on the property for all purposes, and would have so been at any time for more than twenty-five years past. It matters not whether the property in question belonged to the

husband or to the wife, or was that of the community. (*Marlow* v. *Barlew*, 53 Cal. 456; *Parry* v. *Kelley*, 52 id. 334.)

As part consideration for the increase of two per cent. per year on the arrearages of interest, the mortgagee was lending $2,000 additional. Will it reasonably be inferred that he lent this further sum and waived his right to foreclose and get his principal of $36,000 on default of payment of interest, taxes, etc., for so paltry an advantage, and yet carefully guard that right on all the inferior sums in all subsequent mortgages, and notably in the very mortgage containing the supposed waiver? Should not the waiver be explicit, and not left to inference or argument? (*Racouillat* v. *Sansevain*, 32 Cal. 376; *McNeil* v. *Shirley*, 33 id. 202; *Saunders* v. *Clark*, 29 id. 299; Civil Code, §§ 1697, 1698.)

THORNTON, J.:

This is an appeal prosecuted by defendants from a judgment of foreclosure in an action brought on several notes and mortgages executed to secure their payment. The notes are four and the mortgages three in number, and are all set forth *in hæc verba* in the complaint.

It is contended on behalf of appellants that the action was prematurely brought; that when it was instituted nothing was due, at least on the note and mortgage of first of June, 1874. In the discussion of this contention, our attention is called to the following matters which are disclosed by the record. The note first in order of time is in these words:

"SAN FRANCISCO, June 1, 1874.

"$36,000. Five years after date, without grace, for value received, we jointly and severally promise to pay to John Brickell, or his order, the sum of thirty-six thousand dollars in gold coin of the United States, of the standard fineness now established by law, with interest thereon, payable monthly at the rate of ten per cent. per annum in like coin until paid. Any interest remaining due and unpaid shall be added monthly to the principal, and bear interest at the same rate. This note is secured by mortgage of even date herewith.

"DAVID F. BATCHELDER,
"MARIA BAKER BATCHELDER."

And to the following stipulation, among others which appear in the mortgage above referred to:

"But in case default shall be made in the payment of the said principal sum or the interest thereon, or any part thereof, according to the terms of said promissory note, or in the performance of any of the covenants hereinafter expressed, then said party of the second part, his heirs, executors, administrators, or assigns, are hereby empowered to proceed to sell the premises above described, with all the appurtenances, in the manner prescribed by law.

"And out of the money proceeding from such sale, the party of the second part shall retain the above amount of thirty-six thousand dollars, with interest *as aforesaid*, together with the costs and charges of such sale, and two per cent. upon the said principal and interest for lawyers' fees, which shall become a debt from said party of the first part upon filing the complaint in foreclosure, and the amount of all such other charges as are herein mentioned; and the overplus, if any there be, shall be paid by the party making such sale on demand to the party of the first part, heirs and assigns."

In February, 1877, a note was executed by defendants to plaintiff, of which the following is a copy:

"SAN FRANCISCO, February 20, 1877.

"$2,000.   On the first day of June, one thousand eight hundred and seventy-nine (1879), without grace, for value received, we jointly and severally promise to pay John Brickell, or order, two thousand dollars in gold coin of the United States, with interest thereon until paid, at the rate of one and a quarter per cent. per month, payable monthly in gold coin. Any interest which remains due and unpaid shall be added monthly to the principal, form part thereof, and bear interest at the same rate.

"DAVID F. BATCHELDER,
"MARIA BAKER BATCHELDER."

A mortgage was executed by defendants to the payee of this note to secure payment, bearing the same date with the note, containing the following stipulation, *inter alia*, to which we are directed, and on which reliance is placed:

"It is further agreed and understood that all arrearages of

monthly interest now existing, or hereafter to accrue, upon that certain note and mortgage made by said David F. Batchelder and Maria B. Batchelder to said John Brickell, dated June 1, 1874 (mortgage recorded in Liber 407 of Mortgages, at page 180, City and County of San Francisco), shall bear interest from the date respectively at which they *have accrued, or shall accrue,* at one per cent. per month, the same to be added monthly to the principal thereof."

In regard to the note and mortgage of June 1, 1874, we are of opinion that, taking the terms of the note and the stipulation above quoted from the mortgage, the plaintiff had the right, on default in the monthly payment of the interest, to commence an action to foreclose. The interest by the terms of the note was payable monthly, and there was a default in its payment, so alleged and not denied.

It would be difficult to detect any difference between a stipulation empowering a mortgagee to proceed to foreclosure on such default, and one giving authority on like default "to proceed to sell" "in the manner prescribed by law." The law prescribes but one mode of sale in the case of mortgaged property, and that is at public outcry, by virtue of an execution issued on a judgment of foreclosure. (C. C. P., §§ 684, 726, 744.) The power given in the mortgage by the clause just above quoted is to proceed to sell in the manner prescribed by law—which, in our judgment, is in substance the same as a power to proceed to sell by means of an action to foreclose. The power to sell in the manner prescribed by law being given, all means given by law to render such power effectual are also conferred; that is, all means necessary to effectuate a sale in the mode established by law are given. The power to use the lawful means necessary and proper to carry out the express power is conferred and given by an implication as strong and clear as if it was expressed in so many words. (C. C., § 1656.) This is a familiar and well-established rule in the construction of powers. (See Story on Agency, secs. 55, 56, 58, 59, 60, 73; Wharton on Agency, sec. 187.)

Let it be observed here that the choice of means is not left at large. It is limited to that which the law furnishes, and such means the plaintiff is allowed by the language of the contract to adopt. But it is urged that the proper interpretation

of the language of the note shows that such remedy was not to be allowed to plaintiff; that his only right, if the interest was not paid every month, was to add it to the principal and to have interest on it at the rate which the principal bore. To admit the soundness of this position would be to lay out of view the terms of the note, which binds the makers to pay the interest monthly. It would be to discard and reject the rule which requires one in looking for the true meaning of an instrument to accord to every word its just and proper meaning. (C. C., §§ 1639–1641; Broom's Leg. Maxims, 555—*Ex antecedentibus*, etc.)

Some stress is laid on the words "according to the terms of said promissory note," and attention is invoked to the use of the plural "terms," and it is said that "terms" refer as well to the clause in the note relating to the interest remaining due and unpaid, that " it shall be added monthly to the principal," etc., as to the clause relating to the payment of interest monthly. But it should be observed that the clause in the mortgage refers to a default in *the payment* of the interest or any part thereof, not to a default in adding it when unpaid to the principal. Indeed, such a default must refer to something to be done by the mortgagors. It could scarcely refer to something with which the mortgagors had nothing to do. The right to dispose of the interest due and unpaid in the mode prescribed in the note was given to the plaintiff mortgagee, not to the mortgagors. A failure to so dispose might arise from the concession of the plaintiff, and not from any default of the mortgagors, except by a default in paying the interest monthly. The language of the note and mortgage gave to the mortgagee the right on default to proceed to foreclose. He might delay it or waive it, but a delay in exercising this right could not be construed as depriving him of it.

The clause in the mortgage above quoted is entirely unlike that in *Bank of San Luis Obispo* v. *Johnson*, 53 Cal. 99. This dissimilarity will be apparent on comparing the clauses in the respective mortgages. Hence, the decision in that case can not rule the case under consideration.

But it is said that the clause above set forth in the mortgage of the twentieth of February, 1877, entirely alters the agreement made by the note and mortgage of June 1, 1874,

and that the effect of such clause is to postpone the payment of the note of June 1, 1874, with all unpaid interest on it, until the maturity of the note, five years after its date.

If the language is any indication of intent—and we must hold it to be indicative of the intent of or thought in the minds of the parties—we can not perceive how any such conclusion can be reached. If we collate and compare the note and stipulations in the respective mortgages, it must clearly appear that the stipulation of 1877 merely refers to the rate of interest which the arrearages of interest referred to in it are to bear—increases the rate from ten per cent. per annum to twelve per cent. per annum, and nothing more. The interest on the note at the rate fixed on is still to be paid *monthly,* and if it was not paid monthly, the party on whom the obligation rested to pay was still in default, and the stipulation in the mortgage of June 1, 1874, applied to it, and authorized the plaintiff to proceed to foreclose by suit. The agreement that the interest at the increased rate should be added to the principal remains unchanged, except the modification introduced by the clause in the mortgage of 1877.

In fine, the stipulation in the mortgage of 1877 only affects the note of June 1, 1874, and only affects that part referring to the interest not paid when it fell due monthly. It was only intended to modify the term of the note in relation to interest remaining due and unpaid, which was to be added to the principal. The effect was to modify the note, and that only in the particular above referred to, and to make it read as it had originally down to and including the words "payable monthly at the rate of ten per cent. per annum in like coin until paid," and as to the remainder of the note, to read, " all arrearages of monthly interest now existing, or hereafter to accrue on this note, shall bear interest from the date respectively at which they have accrued, or shall accrue, at one per cent. per month, the same to be added monthly to the principal thereof. This note is secured by mortgage of even date herewith."

We must construe these clauses and the first note together. This is the rule which ordinary foresight would indicate in order that the intent of the parties might be detected. The rule on this subject is well established by decided cases. They

are numerous.    We will refer to some of them : *Doe* v. *White-head,* 2 Burr. 704 ; *Davies* v. *Bush,* 1 McCle. & Yo. 58 ; *Crop* v. *Norton,* 2 Atk. 74 ; *Osborn* v. *Phelps,* 19 Conn. 63, 89; *Isham* v. *Morgan,* 9 id. 374 ; *Thompson* v. *McClenachan,* 17 Serg. & R. 110 ; *Jackson* v. *Dunsbagh,* 1 Johns. Cas. 92; *King* v. *King,* 7 Mass. 496; *Chickering* v. *Lovejoy,* 13 id. 51; *Perry* v. *Holden,* 22 Pick. 269 ; *Stow* v. *Tifft,* 15 Johns. 458 ; S. C., 8 Am. Dec. 266; 2 Smith's L. C. 517.   This rule is adopted as part of our statute law by the provisions of the Civil Code, Section 1642 : " Several contracts relating to the same matters, between the same parties, and made as parts of substantially the one trans-action, are to be taken together," and when this is done the other rules in relation to interpretation must be applied, ob-serving that " however broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."    (C. C., § 1648.)

The clause in the first mortgage, giving the right to fore-closure, remained and was applicable to the modified terms of the note, and the clause in the mortgage of 1877 was a recog-nition by all the parties of the note and mortgage of June 1, 1874, as subsisting and valid from 1877, with the modification from the last date.   We can not see that construction can make this matter any plainer.   Further discussion would be " wasteful and ridiculous excess."   No extent of argument could make it any plainer than the words employed make it.

Again, it is covenanted by the parties to the mortgage of June 1, 1874, " that the party of the first part [the mort-gagors] shall pay all taxes upon the above-described premises," etc., and if the party of the first part, " in the performance of any of the covenants hereinafter expressed" (of which the covenant in relation to the payment of taxes, etc., is one), should make default, then the party of the second part (mort-gagee) is empowered to sell the mortgaged premises.   (See this stipulation fully set forth above.)

There was default in payment of taxes for the fiscal year 1877–8, amounting to $580.45.   Such default gave the plaintiff the right to proceed to foreclose, if there was no other.   It makes no difference that the mortgagee had the right to pay the taxes and charge them to the mortgagors, the same to become part of the mortgage lien.   The right to

foreclose was not waived or lost, or the default condoned by the mortgagee plaintiff on his paying the taxes and charging the mortgagors as above, nor by the stipulation which appears above in the mortgage of 1877.

If the case of *Williams* v. *Townsend,* 31 N. Y. 411, is in conflict with what is stated above, we can not accept it as law here, whatever it may be in New York. In that case an action was brought to enjoin the sale of mortgaged premises situated in the city of Buffalo, under a statutory foreclosure. The plaintiff, on the eighth of May, 1853, executed to assignor of defendant a bond and mortgage to secure the payment of $2,640, in ten years from the date thereof, with annual interest. The mortgage contained a condition as follows: " And shall also pay all assessments, taxes, and charges on said premises to be charged on the same, and in case of default in paying the same," the mortgagee and her representatives might discharge such assessments, taxes, and charges, and collect the same, with interest, from the time of such payment under the mortgage, in the manner specified in the condition of the bond.

The condition in the bond relating to the question in this case was in these words: "And shall also pay all assessments, taxes, and charges on the premises described in the mortgage bearing even date herewith and collateral hereto, and in case of any default in paying the same, the said" (obligees) " may discharge said assessments, taxes, and charges, and collect the same, with interest from the time of payment, as part of this bond and the said mortgage." The mortgage contained a power of sale, providing that if default should be made in the payment of all or any part of the said principal sum of $2,640, or the assessments, taxes, and charges, as aforesaid, or of the interest thereof, at the time or times when the same ought to be paid, in such case the mortgagees were empowered to sell the same at public vendue, etc., and out of the moneys arising from such sale to keep and retain in their hands the said sum of $2,640, together with such assessments, taxes, and charges, as shall have been paid by them, together with all costs, charges, and expenses on account of such sale or sales. In 1856, taxes amounting to $33.66 were assessed by the city of Buffalo on the mortgaged premises, for which they were

sold at auction by the comptroller of the city on the twenty-seventh of May, 1857, for taxes, interest, and expenses, then amounting to $36.75. The premises were bid off by one Viele as agent of defendant, and certificates in pursuance of the charter were issued to Viele, who took them in his own name for convenience of transfer. On the first of August, 1857, the defendant commenced a foreclosure under the statute by advertisement in one of the Buffalo newspapers. There was nothing then due of the principal or interest secured by the mortgage. Before the day of sale mentioned in the advertisement, plaintiff paid to the proper officer the amount legally necessary to redeem from the tax sale, and defendant refusing to discontinue the proceedings for foreclosure, the plaintiff commenced this action to restrain the sale. The plaintiff had judgment at special term, which was affirmed by the general term, and defendant appealed.

The opinion of the Court by Davis, J., in which all concurred, announces in the opening sentence this proposition, that, " by the condition of the bond and mortgage, the defendant undoubtedly had a right, after failure by the plaintiff to pay the taxes assessed on the mortgaged premises, to pay and discharge the same, and thereupon to collect the amount so paid by suit upon the bond or by foreclosure of the mortgage." It is then held that a purchase at a tax sale is not a payment of the tax so as to enable the mortgagee to proceed for a foreclosure, and not being paid, the action could not be maintained. This proposition is discussed at much length—which really disposed of the question on which the case was made to turn by the Court. The learned Judge then proceeds: " But it is urged that the failure of the plaintiff to pay the tax was a breach of the condition of the mortgage, and gave defendant a right to foreclose and collect the whole amount secured. There is no clause of the mortgage making the whole sum due on failure to pay the interest, or on breach of any condition. The clause which authorizes the retention by the mortgagee of the whole amount secured after a sale of the premises does not have the effect claimed for it; nor do I think it would countervail the provision of the statute which requires a sale in parcels, when that is practicable, and prohibits a sale of more than sufficient to pay the amount actually due, with the

expenses of sale.   (3 R. S., 5th ed., p. 860, § 6.)   But no right
to foreclose would accrue upon a simple failure of the mort-
gagor to pay the taxes.   To give that right, it is essential
that the holder of the mortgage shall have paid off and dis-
charged the assessment or tax, otherwise no money has become
due which the mortgagee is entitled to retain on a sale.   The
language of the mortgage settles this, for it provides that
' *such assessments, taxes, and charges as shall have been paid
by them* ' may be retained."

It will be observed that the learned Judge states, " there is
no clause in the mortgage making the whole sum due on
failure to pay the interest or on breach of any condition.
The clause which authorizes the retention by the mortgagee
of the whole amount secured after a sale of the premises does
not have the effect claimed for it."

The clause in the mortgage is set forth above.   It is in the
power of sale, which provides that if default be made in the
payment of taxes, etc. (see above), then and in such case the
mortgagees were empowered to sell at public vendue, and
out of the moneys arising from such sale or sales, to *keep and
retain* in their hands the said sum of two thousand six hun-
dred and forty dollars, together with such assessments, taxes,
etc.

If such language does not authorize a party to proceed for
a statutory foreclosure on failure to pay taxes by the mort-
gagor, it would be difficult to find any sufficient reason why.
Words could not make it plainer, unless it be held that a
power " to sell the premises at public vendue " does not vest
such authority.   But it is said by the learned Judge, there is
no clause of the mortgage which makes the whole sum due,
on failure to pay the interest, or on breach of any condition.
As to what is said of interest, it may be laid out of view, as
all the interest had been paid, and the statement as to interest
is correct; but as to the breach of any condition, the Judge
was surely mistaken.   There was a condition in the mortgage
to pay all taxes, etc., and the right to sell the *mortgaged
premises* was given on failure by the mortgagor to pay.   How
then can it be said it was not given on breach of any condi-
tion ?   But it is said the clause which authorizes the collec-
tion of the moneys arising from the sales does not make the

whole amount due, and there is no clause in the mortgage to
make it due.   Then the mortgagee is authorized to proceed
to sell and retain out of the proceeds all the principal and
taxes, etc., and still there is nothing due.   What does such
language mean ?   Is it to be discarded as meaningless ?   No
repugnancy appears which would compel its being disre-
garded.   Is it not the fair construction that the default occur-
ring, the mortgagee is allowed to proceed for the whole
amount of principal as due, to collect it and apply it as di-
rected ?   Is not this implied as strongly and clearly as
language could make it, and is it not true that " all things
that in law or usage are considered as incidental to a con-
tract, or as necessary to carry it into effect, are implied
therefrom " ?   (C. C., § 1656.   The last clause of this section
is not applicable here, and is not quoted.)   If he is allowed to
sell, certainly the whole is due under the rule just above
quoted.

Further in regard to this case: no right to foreclose, it is
said in the opinion, on simple failure of the mortgagor to pay
the taxes.   Why?   The clause relating to the power of sale
above quoted gives it in clear and plain words.   It seems to
us that the Judge was mistaken in saying the right of the
mortgagee to proceed to sell only arose on payment of the
taxes by her.   The language employed speaks another way.
The right to retain was given when paid by her.   The mort-
gagee was not bound to pay the taxes.   The judgment so
holds ( *Williams* v. *Townsend,* 31 N. Y. 415), and the right to
retain was only given where it was necessary to enable her
to retain, *i. e.,* when she paid.   It was useless for any purpose
until she had paid.   The only reason this term as to payment
of taxes was inserted was to make it clear that the mort-
gagee might retain when she did pay them.   It was not to
abridge the right to proceed to sell before given, but to give
authority to retain when paid, which payment might occur
when the proceedings were pending, and which the mort-
gagee might be compelled to make to protect her security.

Unless the judgment in the case cited proceeds on some rule
peculiar to the jurisprudence of New York, and not stated
in the opinion (for the reason that it was so well known to

the Court that it was unnecessary to state it), we can not see how the conclusion reached by Davis, J., can be sustained.

The clause in the mortgage in this case is different from the one in the New York case, as construed by that Court. It authorizes the mortgagee, on failure to pay the interest, or any part of it, according to the terms of the note, or on failure to perform any of the covenants hereinafter expressed, of which the covenant to pay taxes is one, to proceed to sell *the premises in the manner prescribed by law,* and out of the money arising from the sale to retain the whole sum of $36,000, with interest as aforesaid, together with costs and charges of such sale, and lawyers' fees, and the amount of all such other charges as are mentioned in the mortgage, and the surplus, if any there be, to be paid to the mortgagors. The prior payment of the taxes was not essential to commence the action, and if it was, the mortgagee had paid them before commencing it.

It is not apparent that any question has been made by counsel for appellants as to the consideration of the agreement, made by the above-quoted clause from the mortgage of 1877. It was sustained by sufficient consideration—the consideration which sustained the mortgage of 1877 sustained the agreement made by this clause. This is evident from the language with which the clause commences, "It is further agreed and understood," which places it in the same category with all the other promises of the mortgage agreement, and makes the same consideration applicable alike to all. The same consideration sustains each and every pact or promise in the agreement. " *Verba illata inesse videntur.*" (Broom's Leg. Maxims, 645, 646, *et seq.*) The words above quoted are words of reference. In other words, it may be said that every pact or promise in the mortgage springs out of, or is born of and fed by, the same consideration. (See notes to *Roe* v. *Tranmarr,* 2 Smith's L. C. 515, *et seq.*) In drawing instruments of any kind where a consideration is essential, it is not necessary, nor is it the practice, to repeat the consideration upon the insertion of every several promise or covenant. The mention of it once is generally considered sufficient. (C. C., §§ 1614, 1641.) *Haggerty* v. *The Allaire Works,* 5 Sandf. S. C. 231, is cited by counsel for appellants. To what point arising in

the case it is applicable we can not perceive.  In that case it was held that the interest on a bond and mortgage was properly computed at seven per cent. per annum, raised by agreement from six per cent. from a certain date in December, 1842.  Two reasons were given: " 1. Because the agreement for raising the interest from six to seven per cent. was valid in law, *the consideration of forbearance* being necessarily implied, and the continuance of the agreement being co-extensive with the forbearance; 2. Because it was sufficiently proved that the agreement was adopted and acted upon by the defendants, and it was therefore unimportant whether it was originally made by Allaire under their authority."

We presume this judgment of the Court to be correct, but it is no authority to construe the covenant in the mortgage of 1877 above referred to, to be sustained by the consideration of forbearance, and that therefore the mortgagee agreed to forbear until the maturity of the note of June 1, 1877, five years after date.  There being a sufficient consideration expressed in the mortgage of 1877, none can be implied, as was done in the case cited.  *"Expressum facit cessare tacitum."* (Broom's Leg. Maxims, 630.  See rules for interpretation of contracts, C. C., division 3, part 2, title 3.)

The section 1175, from Jones on Mortgages, a portion of which is quoted in brief for appellants, sustains the views taken in this opinion.  (See the section and cases cited in it, particularly *Pope* v. *Durant*, 26 Ia. 233; *O'Connor* v. *Shipman*, 48 How. Pr. 126.)  *Williams* v. *Townsend* is referred to in it.  That has been above considered.  No further observations as to this citation of appellants are requisite.

At the time the note of first of June, 1874, was executed by the defendants, Batchelder and his wife, a married woman was unable to make a contract for the payment of money.  Such was the express language of Section 167 of the Civil Code. (*Butler* v. *Baber*, 54 Cal. 178.)  This section was changed by the Legislature of 1873–4, so that a married woman could make such a contract and bind herself by note and mortgage. (*Parry* v. *Kelley*, 52 Cal. 334; *Wood* v. *Orford*, id. 412; *Marlow* v. *Barlew*, 53 id. 458; *Alexander* v. *Bouton*, 55 id. 19, 20.)  But this did not go into effect until

the first of July, 1874. Consequently the note of June 1, 1874, at the time of its execution, did not bind the wife.

It is conceded by respondent that the note of June 1, 1874, was not binding on the defendant, Maria B. Batchelder, and never bound her personally, and though the facts in the case show strong grounds to hold otherwise, in consequence of the recognition by her for a new consideration, in the clause quoted from the mortgage of 1877, of this note in all its terms as a valid obligation, such recognition having been made when the disability to contract for the payment of money no longer existed, yet as the point is conceded, we say nothing further in regard to it; intending by this to leave the point open for decision should it again come before us. The mortgage of 1874 and the other mortgages are, in our opinion, binding on Mrs. Batchelder, the above-named defendant.

When the notes appearing in the record, other than the note of June 1, 1874, were executed by the defendant Maria, she was competent to make such notes, and they bind her.

It follows from the above that the Court below erred in rendering a personal judgment against Mrs. Batchelder on the note of June 1, 1874, and the interest on it, and the decree will be modified in that regard. In other respects the judgment is correct and is affirmed.

Counsel for respondent will prepare a decree modified in accordance with the views herein expressed, and present it on notice to the Chief Justice of this Court.

MORRISON, C. J., and MYRICK and SHARPSTEIN, JJ., concurred.

After the foregoing decision was rendered, a rehearing was had in Bank, upon which the following decision was rendered:

The COURT:

This case was heard before Department One of this Court, and its opinion filed June 24, 1881. (7 Pac. C. L. J. 733.) Subsequently, a hearing before the Court in Bank was granted. Such hearing having been had, an opinion by the Court in Bank was filed May 30, 1882. (9 id. 515.) Thereafter a re-

hearing in Bank was granted. Such rehearing has been had. We are satisfied with the views expressed in the opinion of the Court in Bank; and for the reasons therein given, the Court now makes the same order, and gives the same judgment as therein contained.

McKINSTRY, McKEE, and ROSS, JJ., dissented.